UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL NATIONAL MORTGAGE ASSOCIATION, a corporation existing under the laws of the United States,

       Plaintiff,

v.

WELSH WESTMINSTER APARTMENTS, LLC, a Michigan limited liability company, AFRO WESTBELT, LLC, a Delaware limited liability company, and KWH MANAGEMENT, LLC, a Michigan limited liability company,

       Defendants.
_____/

Case No. 2:09-cv-14535
Hon. Robert H. Cleland

BODMAN LLP
By:   Dennis J. Levasseur (P39778)
       Jason R. Gourley (P69065)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
dlevasseur@bodmanllp.com
jgourley@bodmanllp.com
(313) 259-7777
Attorneys for Plaintiff Federal National Mortgage Association

DAVID W. YALDO, P.C.
By:   David W. Yaldo (P36817)
4036 Telegraph Road, Suite 204
Bloomfield Hills, Michigan 48302
dyaldo@sypclaw.com
(248) 645-1500
Attorneys for Defendants

_____/

**ORDER APPOINTING RECEIVER AND
GRANTING PRELIMINARY INJUNCTION**

      Plaintiff filed a verified complaint in this action seeking the appointment of a receiver over certain real property located in the City of Taylor, Wayne County, Michigan.  This Court having reviewed plaintiff's complaint, defendants' answer (if any), and this Order, and being otherwise duly advised in the premises,

IT IS ORDERED THAT:

1.     Terry B. Schwartz of Dover Realty Advisors, LLC ("Receiver"), effective Friday, 7, December 11, 2009 at 12:00 noon, is appointed as the Receiver over the "Mortgaged Property," which means:

    (A)    The multifamily real estate development commonly known as Westminster Park Apartments, located at 23710 Crisler Street, in the City of Taylor, Wayne County, Michigan ("Real Estate") on which plaintiff holds Mortgages and which is more fully described in the Mortgages, copies of which are attached to plaintiff's verified complaint in this matter and incorporated by reference, together with all buildings, structures and improvements on the Real Estate;

    (B)    All fixtures of every kind or nature located in or upon or attached to, or used or intended to be used in connection with, the operation of the Real Estate;

    (C)    All of the collateral and assets of defendants, as described in the Mortgages attached to plaintiff's verified complaint including, but not limited to, all machinery, apparatus and equipment, materials, supplies, articles of personal property used in connection with or with the operation of the Real Estate;

    (D)    All the rent, royalties, issues, revenues, income, profits and other benefits of the Real Estate and the facilities thereon under present or future contracts, occupancy agreements, agreements for reimbursement, or otherwise, together with all accounts due or to become due as income in connection with the operations of the Real Estate ("the Rents") all as more fully described in the Mortgages attached to plaintiff's verified complaint;

    (E)    All permits, licenses and other contracts pertaining to the Real Estate and the operations of the Real Estate;

    (F)    All books, records, accounts or documents which in any way relate to the Real Estate, the Rents, or the operations of the Real Estate, and copies of all documents defendants is legally obligated to retain;

    (G)    All other property, estate, right, title and interest as described in the Mortgages and the other Loan Documents attached to and referred to in plaintiff's verified complaint; and

    (H)    All bank accounts maintained by defendants, including any operating accounts and/or security deposit accounts, devoted solely to the Mortgaged Property.  To the extent that there are accounts with commingled funds, those funds originating from the Mortgaged Property, including rents, shall be turned over to the Receiver.

2.    The Receiver may contract Paragon Properties, LLC, a Michigan property management company managed by Dover Realty Advisors, LLC ("Property Manager"), to manage the day-to-day operations of the Mortgaged Property under the supervision of the Receiver.

3.    Defendants and their officers, directors, employees, partners, trustees, agents, representatives and/or any entity controlled by defendants are directed to cooperate with the Receiver in the transition of the management of the Mortgaged Property and shall make immediately available to the Receiver and/or Property Manager all of their records concerning the Mortgaged Property, to the extent that defendants maintain such items, so that the Receiver and/or Property Manager may adequately account for any revenue collected or owing as of and after the date the Receiver is appointed, including, but not limited to, all:

    (A)    Leases including communication/correspondence files;

    (B)    A current rent-roll as well as tenant and family member contact names and telephone numbers;

    (C)    A current aged accounts receivable/delinquency report;

    (D)    The occupant ledgers;

    (E)    Documents identifying and summarizing all pending litigation;

    (F)    All operating licenses;

    (G)    Documents pertaining to all pending new leases/renewals;

    (H)    All existing service contracts;

    (I)    All bids pending for contractor work;

    (J)    To the extent that defendants have employees, copies of all on site employee payroll records and employee files and applications to include number of employees on health or dental program by coverage (single, single plus, or family coverage), gender and age of each employee;

    (K)    All documents, books, records and computer files and records concerning the rents, profits, finances, issues, and operation and management of the Mortgaged Property, including, but not limited to, accounts with any financial institutions; and

    (L)    Such other records pertaining to the management of the Mortgaged Property as may be reasonably requested by the Receiver and which are in defendants' possession or custody or subject to its control.

4.    The release of employee payroll records and files, described in paragraph 2(J), above, to the Receiver and/or Property Manager is authorized by this Order.

5.    Immediately upon entry of this Order, the Receiver and/or Property Manager has the authority to operate the Mortgaged Property. The Property Manager shall act under the direction of the Receiver.

6.    Defendants and any third-parties receiving notice of this Order shall also surrender to the Receiver and/or Property Manager all monies that they currently or later possess (and/or that is or becomes subject to their control) from revenue, profits, rents and/or income collected from the operation of the Mortgaged Property, including any money held in accounts maintained by defendants at any financial institution.

7.    Immediately upon entry of this Order and continuing until expiration or termination of the receivership, the Receiver and/or Property Manager is authorized to take any actions the Receiver and/or Property Manager deems reasonable and appropriate to take possession of, to exercise full control over, and to prevent waste and to preserve, manage,

maintain, secure and safeguard the Mortgaged Property, including, but not limited to, all cash on hand, bank accounts, credit card receipts, bank deposits, other cash collateral as well as all Mortgaged Property, and take such other actions as may be necessary and appropriate to take possession, to exercise full control, to prevent waste and to preserve, secure and safeguard the receivership property, including taking possession of and copying, if necessary: all books, records, notes, memoranda, loan documents, deeds, bills of sale, canceled checks, check ledgers, calendar notes, diary notes, notes, records, ledgers, electronically stored data, tape recordings, computer discs, or any other financial documents or financial information in whatever form belonging to defendants that relate in any way to the defendants' business practices or finances or the Mortgaged Property.  Without limiting the generality of the foregoing, the Receiver and/or Property Manager shall:

(A) Take all action determined by the Receiver to be necessary or appropriate to safeguard and preserve all tangible and intangible assets of the Mortgaged Property and all licenses used in connection with the operation of the Mortgaged Property;

(B) Collect all revenues, profits, income, Rents, and issues from the Mortgaged Property;

(C) To allow the plaintiff, the defendants, and their counsel access to the Mortgage Property at reasonable times to inspect the Mortgaged Property and all books and records thereof;

(D) To collect any unpaid or delinquent rents, revenues, issues and profits regardless of when accrued, and to prosecute eviction proceedings;

(E) To enforce termination or approve any contracts and/or agreements regarding the Mortgage Property, subject to plaintiff's approval;

(F) To retain, hire, or discharge on-site employees;

(G) To establish pay rates of on-site employees and to pay all withholding taxes regarding such employees that accrued after the entry of this Order;

  (H) Manage, maintain and operate the Mortgaged Property, including without limitation, the payment from funds received as Receiver of all of the following (collectively the "Operating Expenses"): (i) all ordinary and necessary operating expenses arising from the operation by the Receiver of the Mortgaged Property for the period after entry of this Order until expiration or termination of the receivership; (ii) all current real and personal property taxes and assessments (and delinquent taxes, with the prior written consent of Plaintiff); and (iii) all premiums of hazard, liability and other insurance policies upon the Mortgaged Property for term of the receivership; and

  (I) To access any accounts maintained by defendants at any financial institution.

8. The Receiver shall receive reasonable compensation for its services, payable from the funds collected from operation of the Mortgaged Property. The Receiver's fee shall be a base rate of $5,500 a month or a monthly management fee of 5.5% of collections per month plus travel expenses, whichever is greater.

9. All existing insurance relating to the operation and management of the Mortgaged Property, including but not limited to fire, extended coverage, property damage, general and professional liability, and workers' compensation shall remain in effect, and defendants and third parties with notice of this Order shall cooperate with the Receiver and/or Property Manager in its efforts regarding such insurance including making sure that plaintiff is named as an insured. The Receiver and/or Property Manager shall be named as additional insureds on all such policies. Any renewals shall be the responsibility of the Reciever.

10. Should the Receiver and/or Property Manager not have sufficient funds to pay all of the Operating Expenses for the Mortgaged Property, plaintiff may, in its sole discretion (without being under any obligation to do so), advance its own funds to pay such Operating Expenses as plaintiff may elect to have paid. The repayment of all such funds advanced by

plaintiff shall be secured by the Mortgaged Property and under the Mortgage. If such funds are advanced by plaintiff subsequent to plaintiff's mortgage foreclosure sale, such amounts advanced may be added to plaintiff's credit bid as and to the extent permitted by applicable law.

11.  Should the Receiver have funds in excess of the operating expenses for the Mortgaged Property, the Receiver and/or Property Manager shall provide all such funds, on a monthly basis, to plaintiff. All such funds shall be applied to the amount owed to plaintiff by the defendants under the Mortgages for the Mortgaged Property.

12.  Neither plaintiff nor the Receiver and/or Property Manager shall be liable for any claim, obligation, liability, action, cause of action, cost or expense of defendants or the Mortgaged Property arising out of or relating to events or circumstances occurring prior to this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of defendants, and any liability to which defendants are currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Mortgaged Property and operation of defendants' business (collectively all of the foregoing is referred to as "Pre-Receivership Liabilities"). Neither the plaintiff nor the Receiver and/or Property Manager shall be obligated to advance any funds to pay any Pre-Receivership Liabilities. Notwithstanding the foregoing, with the prior written consent of plaintiff (but not otherwise) the Receiver may pay, from funds collected from operation of the Mortgaged Property, Pre-Receivership Liabilities that were incurred within the 30 days before the entry of this Order in the ordinary course of business and that are not payable to defendants' insiders, affiliates, related companies, parent companies, owners or those entities with common ownership and/or control.

13. The Receiver shall file with this Court and electronically serve on the parties who have filed appearances a monthly accounting of all receipts and disbursements concerning the performance of its duties under this Order, and a final accounting within 30 days after termination of the receivership.

14. The Receiver and/or Property Manager shall have the power to enter into, modify, extend, terminate, and/or enforce leases and other contracts in connection with the Mortgaged Property in the ordinary course of business; provided, however, in so doing the Receiver shall not concede, settle, compromise or pay any Pre-Receivership Liabilities.

15. If the net proceeds of any mortgage foreclosure sale of the Mortgaged Property are insufficient to pay in full the indebtedness of defendants to plaintiff, any excess Rents, income and profits after payment of operating expenses shall be paid on a monthly basis (including during any redemption period) to plaintiff to be applied to such deficiency. If there is no deficiency or if there remains an excess of proceeds after payment in full of any deficiency, the remaining excess shall be paid under further order of this Court.

16. The Receiver and/or Property Manager and their employees, agents, and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts and/or the failure to comply with this Court's orders.

17. The Receiver and/or Property Manager is authorized, in its discretion, to operate the Mortgaged Property under any and all existing agreements that are currently in place between the defendants and any third-party.

18. This Court shall retain jurisdiction over this action, the Mortgaged Property and the parties for the purpose of giving such other relief upon proper showing as is consistent with this Order and substantial justice. Unless otherwise ordered by this Court, the receivership shall terminate with respect to any of the Mortgaged Property upon the earliest of: (a) expiration of the statutory redemption period for the mortgage foreclosure sale for such Mortgage Property, (b) stipulation of the plaintiff and defendants, or (c) further order of this Court. The Receiver may, from time to time, upon notice to all parties who have appeared in this action, apply to this Court for further and other instructions and for further powers necessary to enable Receiver and/or Property Manager to fulfill its duties under this Order.

19. Until further Order of this Court, defendants, their agent and employees, and all other persons with notice of this Order (other than Receiver), are restrained and enjoined from directly or indirectly transferring, encumbering, removing, expending, distributing, concealing, destroying, mutilating, damaging, erasing, altering, disposing of or otherwise diminishing or causing harm to any of the Mortgaged Property, or any part of the Mortgaged Property, all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances, and goods of every nature, and all articles of personal property located in, or on, or used, or intended to be used in connection with the Mortgaged Property, all proceeds from the operations of the Mortgaged Property, including all revenue, income and profits, and all documents relating in any way to the defendants' business practices or finances or the Mortgaged Property. No security is required prior to issuance of this injunction.

20. Except by leave of this Court and except with respect to plaintiff's right to foreclose its mortgage on the Mortgaged Property, during the pendency of the receivership,

defendants, and all other persons, creditors and entities are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of defendants, the Receiver, receivership assets, or the Receiver's duly authorized agent acting in their capacities as such, including but not limited to, the following actions:

    (A)    Commencing, prosecuting, litigating or enforcing suit, except that the actions may be filed to toll any applicable statute of limitations;

    (B)    Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of defendants that relates in any way to the Mortgage Property, or attempting to foreclose, forfeit, alter or terminate any of defendants' interest in the Mortgage Property, whether such acts are part of a judicial proceeding or otherwise;

    (C)    Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Mortgage Property; and

    (D)    Doing any act or thing to interfere with the Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Receiver or the duties of the Receiver, or to interfere with the exclusive jurisdiction of this Court over the Mortgage Property.

This paragraph does not prevent defendants from commencing litigation that does not relate to the Mortgaged Property. This paragraph does not stay the commencement or continuation of an action or proceeding by a governmental until to enforce such governmental unit's police or regulatory power.

    21.    The Court finds that plaintiff in seeking to obtain a receiver is engaged in a workout activity, as that term is defined by M.C.L.A. §324.20101a, and its actions in seeking appointment of a receiver are intended to protect the value and marketability of its collateral. Further, plaintiff's actions in seeking the appointment of a receiver to represent the exercise of remedies available to a creditor under Michigan law for breach of a loan agreement within the

scope of CERCLA, 42 U.S.C. §9601(20)(F)(iv)(vii) do not amount to participation in management as that term is defined in CERCLA, 42 U.S.C. 9601(20)(E) and (F).

        S/Robert H. Cleland
        Hon. Robert H. Cleland
        United States District Court Judge

Dated: 12/11/2009

Approved for entry:

| BODMAN LLP | DAVID W. YALDO, P.C. |
|---|---|
| By: /s/ Dennis J. Levasseur<br>Dennis J. Levasseur (P39778)<br>Jason R Gourley (P69065)<br>6th Floor at Ford Field<br>1901 St. Antoine Street<br>Detroit, Michigan 48226<br>dlevasseur@bodmanllp.com<br>(313) 259-7777<br>Attorneys for Plaintiff Federal National Mortgage Association | By: /s/ David W. Yaldo<br>David W. Yaldo (P36817)<br>4036 Telegraph Road, Suite 204<br>Bloomfield Hills, Michigan<br>dyaldo@sypclaw.com<br>(248) 645-1500<br>Attorneys for Defendants |

Detroit_969776_1